

**FILED**

Jul 20 2015, 10:45 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT

Briane M. House
R. Daniel Faust
House Reynolds & Faust, LLP
Carmel, Indiana

ATTORNEYS FOR APPELLEE

Scott L. Starr
Jacob M. O'Brien
Starr Austen & Miller, LLP
Logansport, Indiana

IN THE

# COURT OF APPEALS OF INDIANA

Charles R. Ferguson,

*Appellant,*

*v.*

The Estate of Lera V. Ferguson,

*Appellee.*

July 20, 2015

Court of Appeals Case No.
34A02-1411-ES-793

Interlocutory Appeal from the
Howard Circuit Court
The Honorable J. David Grund,
Special Judge

Trial Court Cause No. 34C01-1310-ES-52

**Bradford, Judge.**

# Case Summary

[1] Lera V. Ferguson passed away intestate in 2013 and was survived by her two children and sole heirs, Appellant Charles Ferguson and Nancy Mosson. Mosson was appointed personal representative of Lera's estate ("the Estate").

Charles eventually filed a claim for over one million dollars against the Estate for services provided to Lera over her lifetime, a claim that Mosson disallowed.

[2] Meanwhile, Mosson had petitioned the trial court for authority to sell real estate, namely a parcel that was the family farm ("the Farm"). Charles objected to Mosson's petition and requested the trial court to set a bond sufficient to stay the sale. After a hearing, the trial court ordered Charles to deliver a surety bond of $1,133,833.71, which represented the amount of his claim plus some administrative costs, within thirty days in order to stay the sale of the Farm. Charles now appeals, contending that the trial court erred in setting his bond. The Estate argues that Charles's interlocutory appeal should be dismissed because the trial court's order did not give him an interlocutory appeal of right and he did not follow the procedures for discretionary interlocutory appeals. Because we conclude that Charles's interlocutory appeal was properly taken and that the trial court abused its discretion in setting the amount of Charles's bond, we reverse and remand with instructions.

## Facts and Procedural History

[3] Lera died intestate on June 7, 2013, survived by her two children and sole heirs, Mosson and Charles. On October 2, 2013, the trial court appointed Mosson personal representative of the Estate, whose sole asset of significance is the Farm. On December 23, 2013, Charles filed his claim against the Estate, alleging that Lera had entered into a lifetime contract for personal services with Charles and that the Estate owed him $1,073,833.71.

On March 6, 2014, Mosson petitioned for authority to sell the Farm, which motion was granted. On March 12, 2014, Charles moved to vacate the trial court's order granting Mosson authority to sell the Farm, which motion the trial court granted. On April 3, 2014, Mosson disallowed Charles's claim against the Estate.

On April 28, 2014, Mosson filed a memorandum in support of her petition for authority to sell the Farm, reasserting her request to sell the Farm. On August 1, 2014, Charles responded to Mosson's renewed request to sell the Farm and requested that the trial court set a bond sufficient to pay the Estate's administrative expenses and stay the sale of the Farm pursuant to Indiana Code section 29-1-15-4. Following a hearing, the trial court issued an order ("the Order") on October 14, 2014, that provided, in part, as follows:

> The Court finds that there is an estate claim filed by [Charles] in the amount of $1,[073],833.71. [Mosson] further estimating approximately $60,000.00 of the expenses in estate existing. The Court finds that I.C. 29-1-15-4 specifically requires that the bond be "Conditioned to pay all obligations of the estate to the extent that the other property of the estate is insufficient therefor[.]" The Court finds that the aforementioned claim is a potential obligation of the estate, along with other estate administration expenses.
>
> The Court further finds that the parties agree that there are no other assets sufficient to satisfy the obligations of the estate. Therefore, the Court orders that [Charles] shall deliver to the Clerk of the Court a surety bond in the amount of $1,133,833.71. The Court orders said bond to be posted within thirty (30) days of this order. If said bond is not posted within the aforementioned time frame, [Mosson], as personal representative

of [the Estate], is authorized to sell [the Farm] for not less than the appraised value.

Order pp. 2-3.

[6] On November 12, 2014, Charles filed his notice of interlocutory appeal. On appeal, Charles contends that the trial court abused its discretion in setting the amount of his bond. The Estate counters that Charles failed to employ the proper procedures to perfect his allegedly discretionary interlocutory appeal and the trial court did not err in determining the amount of Charles's bond. Charles responds to the Estate's first claim by arguing that his interlocutory appeal is one of right, not subject to the rules governing discretionary interlocutory appeals.

# Discussion and Decision

## I. Whether Charles's Interlocutory Appeal is One of Right

[7] The Estate contends that Charles's appeal is not properly before this court because the Order is subject to Indiana Appellate Rule 14(B), which governs discretionary interlocutory appeals, and Charles did not satisfy the section's requirements. Charles responds that his appeal is one of right, governed by Appellate Rule 14(A).[1] Appellate Rule 14 provides, in part, as follows:

---

[1] Charles also argues, essentially, that the Estate's argument does not make it clear on which grounds it seeks dismissal of his appeal. The Estate's argument is more than clear enough for us to evaluate.

**A. Interlocutory Appeals of Right.** Appeals from the following interlocutory orders are taken as a matter of right by filing a Notice of Appeal with the Clerk within thirty (30) days after the notation of the interlocutory order in the Chronological Case Summary:

> (1) For the payment of money;
> (2) To compel the execution of any document;
> (3) To compel the delivery or assignment of any securities, evidence of debt, documents or things in action;
> (4) For the sale or delivery of the possession of real property;
> (5) Granting or refusing to grant, dissolving, or refusing to dissolve a preliminary injunction;
> (6) Appointing or refusing to appoint a receiver, or revoking or refusing to revoke the appointment of a receiver;
> (7) For a writ of habeas corpus not otherwise authorized to be taken directly to the Supreme Court;
> (8) Transferring or refusing to transfer a case under Trial Rule 75; and
> (9) Issued by an Administrative Agency that by statute is expressly required to be appealed as a mandatory interlocutory appeal.

The Notice of Appeal shall be in the form prescribed by Rule 9, and served in accordance with Rule 9(F)(10).

**B. Discretionary Interlocutory Appeals.** An appeal may be taken from other interlocutory orders if the trial court certifies its order and the Court of Appeals accepts jurisdiction over the appeal.

[8] "An appeal from an interlocutory order is not allowed unless specifically authorized by the Indiana Constitution, statutes, or the rules of court." *Allstate Ins. Co. v. Scroghan*, 801 N.E.2d 191, 193 (Ind. Ct. App. 2004) (citing *Bayless v. Bayless,* 580 N.E.2d 962, 964 (Ind. Ct. App. 1991)*, trans. denied*), *trans. denied*.

"The authorization is to be strictly construed, and any attempt to perfect an appeal without such authorization warrants a dismissal." *Id*. (citing *Anthrop v. Tippecanoe Sch. Corp.,* 257 Ind. 578, 277 N.E.2d 169, 171 (1972)). "The matters which are appealable as of right under Appellate Rule [14(A)] involve trial court orders which carry financial and legal consequences akin to those more typically found in final judgments: payment of money, issuance of a debt, delivery of securities, and so on." *State v. Hogan*, 582 N.E.2d 824, 825 (Ind. 1991).

[9] Charles contends that Appellate Rule 14(A)(4) applies, arguing that the Order is for the sale of real property, namely, the Farm. We disagree with Charles on this point. However, keeping in mind our preference for resolving disputes on the merits, *see, e.g.*, *Coslett v. Weddle Bros. Const. Co.*, 798 N.E.2d 859, 862 (Ind. 2003), we conclude that the Order falls under subsection (A)(1), an order "[f]or the payment of money[.]" The Order specifically orders Charles to deposit a bond payment in excess of one million dollars with the trial court clerk, the consequences of a failure to do so being the sale of the Farm, an act that could not be undone if it occurred. We have little trouble concluding that the Order carries legal and financial consequences akin to a final judgment. Moreover, it does not matter if some—or even most—of the bond is likely to be returned to Charles eventually. As we stated in *Schwedland v. Bachman*, 512 N.E.2d 445, 450 (Ind. Ct. App. 1987), the "purpose of allowing appeals for the payment of money is to provide a remedy to parties compelled to part with money which is tied up awaiting litigation[.]" *Id*. at 450 (citing *McKnight v. Knisely*, 25 Ind. 336,

337 (1865)).  Even if Charles's claim against the Estate is valid, it will do him little good if he cannot afford to pursue the litigation further because of the bond he has been ordered to post.  We conclude that Charles's interlocutory appeal is one of right pursuant to Appellate Rule 14(A)(1), and we therefore have jurisdiction to hear it.

## II.  Whether the Trial Court Abused it Discretion in Setting the Amount of Charles's Bond

[10]  Charles contends that the trial court abused its discretion in setting the bond at $1,133,833.71, which represents the amount of his claim against the Estate plus $60,000.00 in Estate administrative costs.  Indiana Code section 29-1-15-4 provides as follows:

> An order authorizing a personal representative to sell, mortgage or lease real or personal property for the payment of obligations of the estate shall not be granted if any of the persons interested in the estate shall execute and file in the court a bond in such sum and with such sureties as the court may approve, conditioned to pay all obligations of the estate to the extent that the other property of the estate is insufficient therefor, within such time as the court shall direct.  An action may be maintained on such bond by the personal representative on behalf of any person interested in the estate who is prejudiced by breach of any obligation of the bond.

[11]  This issue ultimately turns on the interpretation of section 29-1-15-4.  "The interpretation of a statute is a question of law reserved for the courts."  *Scott v. Irmeger*, 859 N.E.2d 1238, 1239 (Ind. Ct. App. 2007).

> A statute should be construed so as to ascertain and give effect to the intention of the legislature as expressed in the statute. In so doing, the objects and purposes of the statute in question must be considered as well as the effect and consequences of such interpretation. When interpreting the words of a single section of a statute, this court must construe them with due regard for all other sections of the act and with regard for the legislative intent to carry out the spirit and purpose of the act. We presume that the legislature intended its language to be applied in a logical manner consistent with the statute's underlying policy and goals. Statutes relating to the same general subject matter are in pari materia and should be construed together so as to produce a harmonious statutory scheme. Courts are not bound to adopt a construction that would lead to manifest absurdity in order that the strict letter of the statute may be adhered to. They will rather look to the intention of the legislature, as gathered from the import of the whole act, and will carry out such intention as thus obtained.

*Fuller v. State*, 752 N.E.2d 235, 237-38 (Ind. Ct. App. 2001) (citations omitted).

[12] In arguing that the trial court properly set the amount of Charles's bond, the Estate points out that Indiana Code section 29-1-15-4 requires that the bond be set "in such sum and with such sureties as the court may approve, conditioned to pay all obligations of the estate to the extent that the other property of the estate is insufficient therefor[.]" Essentially, the Estate's argument seems to be that the trial court properly set Charles's bond in a sum that would cover all claims against the Estate, even though Charles is the primary claimant. Charles argues that his claim itself is sufficient surety for his claim and contends that this cash bond should have been set in the amount of the Estate's remaining

administrative expenses.  Under the circumstances of this case, we agree with Charles.

[13]   The obvious purpose of Indiana Code section 29-1-15-4 is to protect those who have claims against estates while giving "interested persons"[2] an avenue to preserve real estate that otherwise would have to be liquidated.  In practice, an interested person must be willing to guarantee the Estate's debts to claimants if he wishes to prevent a sale of real estate which is intended to raise money to satisfy those debts.  In this case, however, the claimant and the interested person are one and the same:  Charles.  It strikes us as somewhat unjust that Charles should, in effect, be forced to post a bond to protect himself if he, understandably, does not wish to.  This is made plain when one considers what would happen down the road if Charles were required to post surety for his own claim:  if Charles's claim were determined to be valid, he would receive his bond in satisfaction of the claim, and if his claim were denied, his bond would be returned to him as no longer required.  Ordering Charles to post a bond to cover his own claim does not protect him; if anything, it harms him by denying him the use of his money.  We do not believe that this is what the General Assembly had in mind when drafting Indiana Code section 29-1-15-4.  We

---

[2]  Indiana Code section 29-1-1-3(13) provides as follows:

> "Interested persons" means heirs, devisees, spouses, creditors, or any others having a property right in or claim against the estate of a decedent being administered.  This meaning may vary at different stages and different parts of a proceeding and must be determined according to the particular purpose and matter involved.

conclude that the trial court abused its discretion in setting Charles's bond pursuant to Indiana Code section 29-1-15-4.

# Conclusion

[14] We conclude that the Order was one "for the payment of money" and therefore provided Charles with an interlocutory appeal of right. Moreover, we conclude that the trial court abused its discretion in ordering that Charles post a bond as surety for his own claim. We reverse the judgment of the trial court and remand with instructions to order Charles to post a bond of $60,000.00 (the amount of administrative costs to date) in order to stay the sale of the Farm and for further proceedings not inconsistent with this opinion.

[15] We reverse and remand with instructions.

May, J., and Mathias, J., concur.